1
2
3
4
5
6
7
8

BRIAN S. KABATECK,  SBN 152054
 (bsk@kbklawyers.com)
RICHARD L. KELLNER,  SBN 171416
 (rlk@kbklawyers.com)
ALFREDO TORRIJOS,  SBN 222458
 (at@kbklawyers.com)
KABATECK BROWN KELLNER LLP
644 South Figueroa Street
Los Angeles, California  90017
Telephone: (213) 217-5000
Facsimile: (213) 217-5010

Attorneys for Plaintiffs
and the proposed class

9

## UNITED STATES DISTRICT COURT

10

## NORTHERN DISTRICT OF CALIFORNIA

11
12
13
14

THEODORE KAGAN, JAMES AVEN,
LAURA JACOBS, JOSEPH SOFFA, and
ALBERKRACK FAMILY LIMITED
PARTNERSHIP, on behalf of themselves
and all others similarly situated,

15

Plaintiffs,

16

vs.

17
18
19
20
21
22
23
24
25
26

WACHOVIA SECURITIES, L.L.C., a North
Carolina limited liability company;
WACHOVIA SECURITIES FINANCIAL
NETWORK, L.L.C., a North Carolina
limited liability company; WACHOVIA
CAPITAL MARKETS, L.L.C, a North
Carolina limited liability company; WELLS
FARGO ADVISORS, L.L.C., a Delaware
limited liability company, WELLS FARGO
ADVISORS FINANCIAL NETWORK,
L.L.C., a Delaware limited liability
company; WELLS FARGO SECURITIES,
L.L.C., a Delaware limited liability
company; WELLS FARGO & COMPANY,
a Delaware corporation; and DOES 1
through 10, inclusive,

27

Defendants.

Case No. CV 09 5337 SC

HON. SAMUEL CONTI

**PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
CLASS ACTION COMPLAINT**

Hearing
Date:   June 11, 2010
Time:   10 a.m.
Ctrm:   1, 17th Floor

28

1

**TABLE OF CONTENTS**

2

3

I.    INTRODUCTION ........................................................................................... 1

II.   PLAINTIFFS' ALLEGATIONS.................................................................... 2

III.  THE APPLICABLE LEGAL STANDARD ................................................. 4

IV.   PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE STATUTE
      OF LIMITATION BECAUSE PLAINTIFFS' CLAIMS DID NOT
      ACCRUE WHILE PLAINTIFFS WERE UNAWARE OF THEIR
      INJURY ........................................................................................................ 5

V.    PLAINTIFFS HAVE SUFFICIENTLY PLED CLAIMS FOR
      BREACH OF CONTRACT, BREACH OF FIDUCIARY DUTY
      AND NEGLIGENCE .................................................................................. 10

      A.    Plaintiffs Have Pled A Claim For Breach Of The Covenant Of Good Faith
            And Fair Dealing ................................................................................. 10

      B.    By Holding Plaintiffs' Property In Their Own Name, Defendants Acted As
            Fiduciaries .......................................................................................... 11

      C.    Plaintiffs Have Pled A Claim For Negligence .................................... 12

VI.   CONCLUSION ........................................................................................... 12

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT
(CV 09 5337 SC)**

**TABLE OF AUTHORITIES**

<u>Cases</u>

*April Enterprises, Inc. v. KTTV*
   147 Cal.App.3d 805 (1983) ............................................................ 5, 6

*Badie v. Bank of America*
   67 Cal.App.4th 779 (1998) .............................................................. 11

*Balistreri v. Pacifica Police Dept.*
   901 F.2d 696 (9th Cir. 1988) ........................................................... 5

*Benasra v. Mitchell Silberberg & Knupp LLP*
   123 Cal. App. 4th 1179 (2004) ....................................................... 11

*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*
   2 Cal.4th 342 (1992) ...................................................................... 11

*Charnay v. Cobert*
   145 Cal.App.4th 170 (2006) ........................................................... 11

*Daniel v. County of Santa Barbara*
   288 F.3d 375 (2002) ....................................................................... 4

*Duffy v. King Cavalier*
   215 Cal.App.3d 1517 (1989) .......................................................... 11

*F.D.I.C. v. Dintino*
   167 Cal.App.4th 333 (2008) ............................................................ 9

*Fanucci v. Allstate Ins. Co.*
   638 F.Supp.2d 1125 (N.D. Cal. 2009) ............................................. 5

*Fox v. Ethicon Endo-Surgery, Inc.*
   35 Cal.4th 797 (2005) .................................................................. 1, 5

*Gilligan v. Jamco Development Corp.*
   108 F.3d 246 (9th Cir. 1997) ........................................................... 5

*Gryczman v. 4550 Pico Partners, Ltd*
   107 Cal.App.4th 1 (2003) ............................................................. 1, 6

*In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*
   102 F.3d 1524 (9th Cir. 1996) ......................................................... 4

*In Schroeder v. City of New York*
   371 U.S. 208 (1962) ...................................................................... 10

*Jolly v. Eli Lilly & Co.*
   44 Cal.3d 1103 (1988) ................................................................. 1, 8

*Leaf v. City of San Mateo*
   104 Cal.App.3d 398 (1980) ............................................................. 5

– iii –

*Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*
    523 U.S. 26, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998) ........................................... 4

*Marks v. Chicoine*
    2007 WL 1056779 (N.D. Cal. 2007) ........................................................ 10

*Mullane v. Central Hanover Bank & Trust Co.*
    339 U.S. 306 (1950) ........................................................................ 10

*Mundy v. Household Fin. Corp.*
    885 F.2d 542 (9th Cir. 1989) .............................................................. 10

*Pierce v. Lyman*
    1 Cal. App. 4th 1093 (1991) ............................................................... 11

*Samuels v. Mix*
    22 Cal.4th 1 (1999) ......................................................................... 6

*Seaman's Direct Buying Service, Inc. v. Standard Oil Co.*
    36 Cal.3d 752 (1984) ...................................................................... 10

*Swinden v. Vanguard Group, Inc.*
    2009 WL 3415376 (N.D. Cal. Oct. 21, 2009) ............................................... 11

*Tarke v. Bingham*
    123 Cal. 163 (1898) ......................................................................... 9

**Statutes**

Cal. Code of Civ. P. §339 ...................................................................... 10

**Rules**

Fed. R. Civ. P. 8 .................................................................................. 4

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT
(CV 09 5337 SC)**

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Defendants held shares issued by the Asia Pulp & Paper Company, Ltd. ("APP") in their name for the benefit of Plaintiffs, who were the actual owners of the securities.  After the settlement of a class action concerning the APP securities, Defendants were ordered by a United States District Court to provide notice of the settlement to all individuals and entities that were the beneficial owners of APP securities held by Defendants.  Defendants failed to comply with this order and Plaintiffs never received notice of the settlement, losing the opportunity to receive their portion of the settlement.

Defendants presently move to dismiss this action on the ground that Plaintiffs' claims are barred by the statute of limitations.  Defendants argue that Plaintiffs' claim accrued in March 2006, the deadline to submit a claim under the APP settlement.  The argument ignores the salient fact that Plaintiffs did not know that they had a claim precisely because Defendants failed to comply to provide them with notice of the class action settlement.  When, as is the case here, a defendant's "failure to give notice of the happening of a certain event is both the act causing the injury and the act that caused plaintiff not to discover the injury," the delayed discovery rule applies and the statute of limitations does not begin to run until the plaintiff has discovered the injury. *Gryczman v. 4550 Pico Partners, Ltd.*, 107 Cal.App.4th 1, 5 (2003).  Defendants seek to avoid the application of this rule by arguing that Plaintiffs should have known of the settlement because notice of the class action settlement was published in two newspapers.  This argument misapplies the law.

Only when a plaintiff has *actual knowledge* of the facts that would put a reasonable person on inquiry notice is a plaintiff imputed with the knowledge that a reasonably diligent inquiry would have objectively uncovered. *Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 1110-1111 (1988).  Stated differently, "plaintiffs are required to conduct a reasonable investigation *after becoming aware of an injury*, and are charged with knowledge of the information that would have been revealed by such an investigation." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th

– 1 –

1   797, 808 (2005).  Defendants' skips the threshold question (whether Plaintiffs' had inquiry

2   notice) and seeks to impute Plaintiff with knowledge they could have discovered had they

3   conducted an investigation.  Here, Plaintiffs had no knowledge of the settlement.  Therefore,

4   Plaintiffs had no knowledge of their injury and they were never put on inquiry notice.  The fact

5   that information existed that would have alerted Plaintiffs to their claims had they conducted an

6   investigation does not begin the running of the limitations period. *F.D.I.C. v. Dintino*, 167

7   Cal.App.4th 333 (2008).  Accordingly, Plaintiff's claims are not barred by the statute of

8   limitations.

9       Defendants also claim that Plaintiffs fail to allege a fiduciary relationship and a conscious

10  and deliberate act, requiring the dismissal of their breach of fiduciary duty and breach of

11  contract claims.  These arguments also fail.  Plaintiffs allege the existence of an agency

12  relationship wherein Defendants held Plaintiffs' property in Defendants' name.  This agency

13  gives rise to fiduciary relationship.  Further, Plaintiffs need only allege objectively unreasonable

14  conduct, irrespective of motive, to state a claim for a breach of the covenant of good faith and

15  fair dealing.

16      Accordingly, Plaintiffs ask the Court to deny Defendants' motion to dismiss in its

17  entirety.

18

19  **II.    PLAINTIFFS' ALLEGATIONS**

20      Plaintiffs entered into contracts with Defendants for brokerage services. [Complaint, ¶

21  51.]  After entering into these contracts, Plaintiffs purchased securities issued by Asia Pulp &

22  Paper Company, Ltd. ("APP"). [Complaint, ¶¶ 24-28.]  As is customary in the securities

23  industry, Plaintiffs' shares were held in the name of Defendants (the "nominal owners") for the

24  benefit of true owners of the securities, Plaintiffs (the "beneficial owners"). [Complaint, ¶ 17.]

25  Thus, only Defendants appeared on the official corporate transfer records for APP securities.

26  [*Id.*]

27

28

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT
(CV 09 5337 SC)**

In 2001, APP was sued for violations of the Securities Exchange Act. [Complaint, ¶ 18.] Several cases were consolidated in the Southern District of New York under the caption *In re Asia Pulp & Paper Securities Litigation*, Master File No. 00 Civ. 7351 (LAK) ("APP Litigation"). [Complaint, ¶ 18.]  After more than three years of litigation, the parties reached a settlement agreement, entering into a Stipulation of Settlement on October 11, 2005. [Complaint, ¶ 19.]  The District Court preliminarily approved the settlement on October 15, 2005. [*Id*.]   The Order preliminarily approving the settlement included the following provision:

> The Claims Administrator shall use reasonable efforts to give notice to nominee owners such as brokerage firms and other persons or entities who purchased APP Instruments during the Class Period as record owners but not as beneficial owners.  ***Such nominee purchasers are directed, within seven (7) days of receipt of the Notice, to either forward copies of the Notice and Proof of Claim to their beneficial owners, or to provide the Claims Administrator with lists of the names and address of the beneficial owners, and the Claims Administrator is ordered to send the Notice and Proof of Claim promptly to such identified beneficial owners***.

[Complaint, ¶ 20.]

The Notice of Pendency of Class Action and Proposed Settlement ("Official Notice"), as approved by the District Court and dated November 30, 2005, provided:

> **SPECIAL NOTICE TO SECURITIES BROKERS**
> **AND OTHER NOMINEES**
> If you purchased any of the APP Instruments (as specified in response to question 1 on page 4 hereinabove) of Asia Pulp & Paper Company, Ltd. ("APP") and its subsidiaries during the period between August 28, 1998 and April 4, 2001, inclusive, for the beneficial interest of a person or organization other than yourself, the Court has directed that, WITHIN SEVEN (7) DAYS OF YOUR RECEIPT OF THIS NOTICE, you either (a) provide to the Claims Administrator the name and last known address of each person or organization for whom or which you purchased such stock during such time period or (b) request additional copies of this Notice and the Proof of Claim form, which will be provided to you free of charge, and within seven (7) days mail the Notice and Proof of Claim form directly to the beneficial owners of the securities referred to herein.  If you choose to follow alternative procedure (b),

– 3 –

the Court has directed that, upon such mailing, you send a statement to the Claims Administrator confirming that the mailing was made as directed.  You are entitled to reimbursement from the Settlement Fund of your reasonable expenses actually incurred in connection with the foregoing, including reimbursement of postage expense and the cost of ascertaining the names and addresses of beneficial owners.  Those expenses will be paid upon request and submission of appropriate supporting documentation.

[Complaint, ¶ 21.]

Pursuant to the Court's Order, Defendants, as nominal owners of the APP securities were to either forward notice of the APP settlement to Plaintiffs or provide Plaintiffs' names and addresses to the settlement administrator so notice could be sent to Plaintiffs.  Defendants failed to comply with this order, failing to forwarded notice directly to Plaintiffs and failing to provided Plaintiffs' names and addresses to the settlement administrator. [Complaint, ¶ 23.]  As a result, Plaintiffs never received notice of the APP settlement and lost the opportunity to make a claim for any settlement benefits. [Complaint, ¶¶ 24-28.]

## III.    THE APPLICABLE LEGAL STANDARD

Plaintiffs are required to give a "short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  Pleadings "must be construed so as to do justice." Fed. R. Civ. P. 8(e).  The purpose of Rule 8(a) is to "give the defendant fair notice of what…the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554 (2007).  When considering a motion to dismiss under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Daniel v. County of Santa Barbara*, 288 F.3d 375, 380 (9th Cir. 2002).  Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials) cannot be considered.  *In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, 102 F.3d 1524, 1537 (9th Cir. 1996), *rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998).

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT
(CV 09 5337 SC)**

"The Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim." *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  It is only under extraordinary circumstances that dismissal is proper under Rule 12(b)(6).  *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).  For a complaint to survive a motion to dismiss, it must contain "only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  Dismissal pursuant to Rule 12(b)(6) is proper only where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).

## IV.   PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATION BECAUSE PLAINTIFFS' CLAIMS DID NOT ACCRUE WHILE PLAINTIFFS WERE UNAWARE OF THEIR INJURY

Defendants seek dismissal of Plaintiffs' claims arguing that the claims are time-barred pursuant to the two year statute of limitations set forth in California Code of Civil Procedure section 339.  Defendants' argument is necessarily premised on their presumption that Plaintiffs' claim accrued in March 2006, the deadline to submit a claim under the APP settlement.  Generally, the accrual date for a cause of action is the date of injury.  However, "[t]here is, of course, an exception to this general rule.  Under the 'discovery rule,' accrual of a cause of action is postponed 'until the plaintiff discovers, or has reason to discover, the cause of action.'" *Fanucci v. Allstate Ins. Co.*, 638 F.Supp.2d 1125, 1133 (N.D. Cal. 2009) (*citing Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797, 806 (2005)).

The discovery rule protects those who are ignorant of their cause of action through no fault of their own and delays accrual until a plaintiff knew or should have known of the wrongful conduct at issue. *April Enterprises, Inc. v. KTTV*, 147 Cal.App.3d 805, 832 (1983) (*citing Leaf v. City of San Mateo*, 104 Cal.App.3d 398, 408 (1980)).

In *April Enterprises* the Court of Appeal for the Second District applied the delayed discovery rule to a breach of contract action where the breach was committed "in secret" and the harm was not reasonably discoverable by the plaintiffs at the time of its commission.  Reviewing the application of the delayed discovery rule in California and other jurisdiction, the court concluded, "A common thread seems to run through all the types of actions where courts have applied the discovery rule.  The injury or the act causing the injury, or both, have been difficult for the plaintiff to detect.  In most instances, in fact, the defendant has been in a far superior position to comprehend the act and the injury. And in many, the defendant had reason to believe the plaintiff remained ignorant he had been wronged. Thus, there is an underlying notion that plaintiffs should not suffer where circumstances prevent them from knowing they have been harmed. And often this is accompanied by the corollary notion that defendants should not be allowed to knowingly profit from their injuree's ignorance." *April Enterprises*, *supra*, at 831.[1]

In *Gryczman v. 4550 Pico Partners, Ltd.*, 107 Cal.App.4th 1 (2003), the California Court of Appeal reiterated that the delayed discovery rule does indeed apply to breach of contract claims.  The defendants in *Gryczman* sold a piece of property in 1997 to a third party without providing the plaintiff with the notice required by the parties' contract, which gave the plaintiff a right of first refusal. *Id.* at 3-4.  The plaintiff brought suit in 2001, and the trial court thereafter granted the defendant motion for summary judgment, holding that the delayed discovery rule did not apply. *Id.*

In overturning the trial court, the court of appeal noted that "[i]n *April Enterprises* we specifically extended the discovery rule beyond the plaintiff's breach of fiduciary duty cause of action to encompass its breach of contract cause of action as well." *Gryczman, supra,* at 5. Echoing the rationale first delineated in *April Enterprises*, the court reasoned that the delayed discovery rule should apply whenever "the act causing the injury would have been 'difficult for

---

[1]   See also *Samuels v. Mix,* 22 Cal.4th 1, 9 (1999), where the California Supreme Court approvingly cites *April Enterprises* when listing the "recognized contexts" to which the delayed discovery rule applies.

– 6 –

1   the plaintiff to detect'" [*Id.* at 6], or where "'the defendant [is] in a far superior position to

2   comprehend the act and the injury [….]'" *Id.* at 5 (quoting *April Enterpirses*, *supra*, at 831).[2]

3   Because the defendants could have sold the property – and thus breached the contract – without

4   plaintiff's knowledge (i.e., "in secret"), the court held that "the running of the statute of

5   limitations was tolled until such time as plaintiff knew or should have known of the wrongful

6   conduct at issue." Id. (citation omitted).

7         Like in *April Enterprises* and *Gryczman*, the wrong at issue here could – and indeed was

8   – committed without Plaintiffs knowledge.  Unlike the prototypical breach of contract scenario –

9   where the breach is immediately obvious, or where information concerning the breach is equally

10  within both parties' reach – Defendants' failure to comply both with the *notice* requirements

11  ordered by the court in the APP action was not made immediately obvious by the commission of

12  the wrong and the Defendants' (who did receive notice) were in a far superior position to

13  comprehend their acts and the injuries that Plaintiffs would suffer because of those acts.  In

14  short, Defendants "failure to give [Plaintiffs'] notice of the happening of a certain event is both

15  the act causing the injury and the act that caused plaintiff not to discover the injury."  *Gryczman,*

16  *supra,* at 6.  Justice mandates that Plaintiffs "'should not suffer where circumstances prevent[ed]

17  [them] from knowing [they had] been harmed'" *Id.* at 5 (quoting *April Enterpirses*, *supra*, at

18  831).

19        Defendants' seek to avoid the application of the discovery rule by arguing that Plaintiffs

20  were put on notice of their claim because notice of class settlement was published in the *Wall*

21  *Street Journal* and the *Financial Times* on some unknown date between October 13, 2005 and

22  February 27, 2006.  Defendants' argument misconstrues the applicable standard.

23        Under the delayed discovery rule the limitations period is triggered if the plaintiff has

24  actual knowledge of the facts surrounding a defendant's wrong or if the plaintiff is put on

25  inquiry notice.  As the court it *Kitzig v. Nordquist*, 81 Cal.App.4th 1384, 1391 (2000) put it:

26

27     [2]   The court took pains to note that: "The rule applies when the injury or the act causing the

28  injury is 'difficult' for the plaintiff to detect, ***not impossible***." *Id.* at 6 (emphasis added).

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT**
**(CV 09 5337 SC)**

1   "This rule sets forth two alternate tests for triggering the limitations period: (1) a subjective test

2   requiring actual suspicion by the plaintiff that the injury was caused by wrongdoing; and (2) an

3   objective test requiring a showing that a reasonable person would have suspected the injury was

4   caused by wrongdoing. [Citation.]  The first to occur under these two tests begins the limitations

5   period." Here, there is no claim that Plaintiffs actually knew of the facts constituting the cause

6   of action.  Accordingly, Defendants' argument must be that Plaintiffs were on inquiry notice.

7        Obviously, the question of whether a plaintiff had actual knowledge is purely subjective

8   test, requiring a determination that the plaintiff actually knew of the facts constituting the cause

9   of action.  In contrast, inquiry notice imposes an objective analysis – or, more precisely, a

10   hybrid subjective-objective test – which requires the court:

11
12       (1)   To determine whether the plaintiff *subjectively* "has notice or
              information of circumstances to put a reasonable person on inquiry";
13            and

14       (2)   If the plaintiff does have such notice, to impute onto the plaintiff the
              knowledge that a reasonably diligent inquiry would have *objectively*
15            uncovered.

16   *Jolly v. Eli Lilly & Co.,* 44 Cal.3d 1103, 1110-1111 (1988) (footnote, citation and internal

17   quotations omitted).

18        In short, only if a person actually becomes aware of facts which would make a reasonably

19   prudent person suspicious, is he or she charged with a duty to investigate further and is assumed

20   to have knowledge of matters which would have been revealed by such an investigation.

21   *Mangini v. Aerojet-General Corp.,* 230 Cal.App.3d 1125, 1150 (1991) (citations omitted); *Fox*

22   *v. Ethicon Endo-Surgery, Inc.*, supra, 35 Cal.4th at 808 ["In other words, plaintiffs are required

23   to conduct a reasonable investigation after becoming aware of an injury, and are charged with

24   knowledge of the information that would have been revealed by such an investigation."]

25   Defendants skip the threshold inquiry, seeking to have the limitations period triggered simply

26   because information alerting Plaintiffs to their claims was *available*.  That, however, is not the

27

28

– 8 –

law.  This same argument was rejected by the court in *F.D.I.C. v. Dintino*, 167 Cal.App.4th 333 (2008).

In *Dintino*, the defendant argued that the plaintiff "should have been charged with notice of its cause of action when there were public records that effectively disclosed" the plaintiff's injury. 167 Cal.App.4th at 352.  The court disagreed, stating:

> Although a plaintiff generally has a duty to show diligence and investigation based on sources of information available to him or her, "[w]here no duty is imposed by law upon a person to make inquiry, and where under the circumstances 'a prudent man' would not be put upon inquiry, the mere fact that means of knowledge are open to a plaintiff, and he has not availed himself of them, does not debar him from relief when thereafter he shall make actual discovery.  The circumstances must be such that the inquiry becomes a duty, and the failure to make it a negligent omission."

*Id.* (*citing Tarke v. Bingham*, 123 Cal. 163, 164-166 (1898)).

Thus, in *Dintino*, "although the public records of the San Diego County Recorder were open and available to [the plaintiff], there was no duty imposed on it, based solely on its mistake, to review those records and discover" the injury. *Id.*  "That mistake, by itself, was insufficient to make a reasonable person suspicious that he or she may have a cause of action and therefore to impose a duty to investigate." *Id.*

Plaintiffs did not have notice of the APP settlement.  They did not receive notice of the settlement by mail (since notice was not mailed to them) and they did not receive notice of the settlement from publication.  Plaintiffs, therefore, were not on inquiry notice and had no reason to investigate whether they had a claim.

Further, the mere fact that notice of the APP settlement appeared in two newspapers is insufficient to show that Plaintiffs should have known of the settlement.  In fact, FRCP 23 requires individual notice to class members where their identities are ascertainable precisely

– 9 –

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT**
**(CV 09 5337 SC)**

1    because publication notice alone is generally insufficient to give class members notice of their

2    due process rights. *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 175 (1974); *In Schroeder v.*

3    *City of New York*, 371 U.S. 208, 213 (1962); *Mullane v. Central Hanover Bank & Trust Co.*,

4    339 U.S. 306, 315 (1950) ("It would be idle to pretend that publication alone as prescribed here,

5    is a reliable means of acquainting interested parties of the fact that their rights are before the

6    courts…. Chance alone brings to the attention of even a local resident an advertisement in small

7    type inserted in the back pages of a newspaper….").

8           An action governed by California Code of Civil Procedure section 339 does not begin to

9    accrue until the "discovery of the loss or damage suffered by the aggrieved party." As alleged in

10   the complaint, Plaintiffs received no notice of the APP settlement and, therefore, did not

11   discover their injury by the March 2006 date asserted by Defendants. Accordingly, Plaintiffs

12   have sufficiently alleged that the accrual of their claims was delayed by the discovery rule.

13

14   **V.    PLAINTIFFS HAVE SUFFICIENTLY PLED CLAIMS FOR**

15          **BREACH OF CONTRACT, BREACH OF FIDUCIARY DUTY AND**

16          **NEGLIGENCE**

17          **A.     Plaintiffs Have Pled A Claim For Breach Of The Covenant Of Good Faith**

18                 **And Fair Dealing**

19          Every contract contains an implied covenant of good faith and fair dealing. *Mundy v.*

20   *Household Fin. Corp.*, 885 F.2d 542, 544 (9th Cir. 1989) (citing *Seaman's Direct Buying*

21   *Service, Inc. v. Standard Oil Co.*, 36 Cal.3d 752, 768 (1984)). The elements of a claim for a

22   breach of the covenant of good faith and fair dealing are: "(1) the existence of a contract; (2) that

23   plaintiff did all, or substantially all of the significant things the contract required; (3) the

24   conditions required for the defendant's performance had occurred; (4) *the defendant unfairly*

25   *interfered with the plaintiff's right to receive the benefits of the contract*; and (5) the plaintiff

26   was harmed by the defendant's conduct." *Marks v. Chicoine*, 2007 WL 1056779 (N.D. Cal.

27   2007) (emphasis added).

28

– 10 –

1    Defendants argue that Plaintiffs failed to allege "a conscious and deliberate act" on the

2    part of Defendants. [Motion, p. 10.]  However, "[t]he covenant of good faith can be breached for

3    objectively unreasonable conduct, regardless of the actor's motive." *Badie v. Bank of America*,

4    67 Cal.App.4th 779, 796 (1998) (*citing Carma Developers (Cal.), Inc. v. Marathon*

5    *Development California, Inc*., 2 Cal.4th 342, 373 (1992)).  Here, Plaintiffs alleged that

6    Defendants failed to comply with the court ordered notice procedure for the APP settlement.

7    Failure to comply with a court order is patently unreasonable conduct that frustrated the

8    Plaintiffs' right to the benefits of the contract for brokerage services.  This is sufficient to allege

9    a breach of the covenant of good faith and fair dealing.

10   **B.     By Holding Plaintiffs' Property In Their Own Name, Defendants Acted As**

11   **Fiduciaries**

12   Under California law, "[t]o establish a cause of action for breach of fiduciary duty, a

13   plaintiff must demonstrate the existence of a fiduciary relationship, breach of that duty, and

14   damages." *Charnay v. Cobert*, 145 Cal. App. 4th 170, 182 (2006) (*citing Benasra v. Mitchell*

15   *Silberberg & Knupp LLP*, 123 Cal. App. 4th 1179, 1183 (2004); *Pierce v. Lyman*, 1 Cal. App.

16   4th 1093, 1101 (1991)).

17   California law recognizes that stockbrokers, as agents, owe a fiduciary duty to their

18   customers. *Duffy v. King Cavalier*, 215 Cal. App. 3d 1517, 1534 (1989).  "Stockbrokers act as

19   agents for buyers and sellers of securities. *Any* agent is also a fiduciary, whose obligation of

20   diligent and faithful service is the same as that of a trustee." *Id.* (emphasis in original).  The

21   Court of Appeal in *Duffy* emphasized that "[t]he question is not whether there is a fiduciary

22   duty, which there is in every broker-customer relationship; rather, it is the *scope or extent* of the

23   fiduciary obligation, which depends on the facts of the case." *Id.* at 1535.

24   Defendants rely principally on *Swinden v. Vanguard Group, Inc.*, 2009 WL 3415376

25   (N.D. Cal. Oct. 21, 2009) for the assertion that Plaintiffs cannot establish a fiduciary relationship

26   with Defendants absent allegations that Defendants provided investment advice and made trades

27   on Plaintiffs' behalf.  Defendants' reliance on *Swinden*, however, is misplaced.  The *Swinden*

28

– 11 –

1  court dismissed the breach of fiduciary duty claim because the plaintiff failed to "put forth any

2  factual allegations to show that defendant provided her with investment advice, made any

3  transactions on her behalf, or otherwise acted in the capacity of a fiduciary." *Id.* at *6. Here, to

4  the contrary, Plaintiffs have alleged that Defendants have acted in the capacity of a fiduciary.

5  Defendants, as agents of Plaintiffs, held Plaintiffs' property – the APP securities – in

6  Defendants' name for the benefit of Plaintiffs. This type of relationship is indistinguishable

7  from a typical trust relationship where property is held by one entity for the benefit of another.

8  Defendants were the record owners of the APP securities and were duty bound, both as

9  fiduciaries and pursuant to a court order, to take the step necessary to ensure Plaintiffs received

10  notice of the APP settlement. Thus, the cases cited by Defendants are inapposite in that

11  Plaintiffs' claims for a breach of fiduciary duty do not stem from any allegedly faulty

12  investment advice. Rather, the scope of the agency relationship between Plaintiffs and

13  Defendants, namely Defendants holding the APP securities in Defendants' name, that gave rise

14  to the fiduciary relationship.

15  **C.     Plaintiffs Have Pled A Claim For Negligence**

16  Defendants' sole argument against Plaintiffs' negligence claim is that the statute of

17  limitations for the claim has run. As already discussed, the discovery rule delayed the accrual of

18  Plaintiffs' claims. Therefore, the negligence claim is not time-barred.

19

20  **VI.     CONCLUSION**

21  Plaintiffs respectfully request that the Court deny Defendants' motion to dismiss.

22

23  Dated: May 21, 2010             **KABATECK BROWN KELLNER LLP**

24

25

26  By: _____/s/_____
                Brian S. Kabateck
27              Richard L. Kellner
                Alfredo Torrijos
28              *Counsel for Plaintiff and the class*

– 12 –